2025 IL App (2d) 250001-U
No. 2-25-0001
Order filed June 25, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* B.M., M.M., Z.M., and A.M., Minors | ) | Appeal from the Circuit Court |
| | ) | of McHenry County. |
| | ) | |
| | ) | Nos. 22-JA-78 |
| | ) | 22-JA-79 |
| | ) | 22-JA-80 |
| | ) | 22-JA-81 |
| | ) | |
| (The People of the State of Illinois, | ) | Honorable |
| Petitioner-Appellee, v. Kyle M., | ) | Mary H. Nader, |
| Respondent-Appellant). | ) | Judge, Presiding. |

PRESIDING JUSTICE KENNEDY delivered the judgment of the court.
Justices Schostok and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not err in finding respondent to be an unfit person due to a failure to maintain a reasonable degree of interest, concern, or responsibility as to the minor children's welfare. Further, it did not err in denying respondent's motion to dismiss the State's petition to terminate his parental rights. We affirm.

¶ 2    Respondent Kyle M. appeals from the trial court's finding that he is an unfit person under section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)) and its denial of his motion to dismiss the State's petition to terminate his parental rights. Respondent is the biological father of

the four minors in this litigation: B.M., M.M., Z.M., and A.M. (collectively, the minor children). For the reasons herein, we affirm.

¶ 3                              I. BACKGROUND

¶ 4     On August 28, 2022, the Department of Children and Family Services (DCFS) took the minor children into protective custody after their mother, Brittany H., left them alone for 20-30 minutes in a locked, running car without air conditioning while she visited Betsy's Slots, a gambling establishment. The minor children were between one and five years old. At the time, respondent was incarcerated on felony theft charges with a projected release date in 2027.[1]

¶ 5     The State filed a petition for adjudication of wardship on August 31, 2022. The petition alleged that, when officers arrived at the scene, Brittany was inside the gambling establishment and B.M. was "crying profusely" when officers entered the vehicle. Brittany reported that "she needed to take a break," and the petition alleged she had a history of leaving them unsupervised. Brittany had previously been indicated for cuts, bruises, welts, and abrasions (September 2019); medical neglect (September 2019); inadequate supervision (May 2021); and burns by neglect (June 2022).

¶ 6     Regarding respondent, the petition alleged that he had a history of using cocaine in the home around the minor children and had committed acts of domestic violence against Brittany in front of the minor children.[2] Both he and Brittany had been indicated for substantial risk of

---

[1]According to status hearing reports, respondent was sentenced on April 12, 2022, to serve 9.5 years for his felony conviction of theft of property between $10,000 and $100,000 committed in a school or place or worship or of governmental property.

[2]In an integrated assessment, respondent reported a history of substance abuse and that his drugs of choice were marijuana and prescription pills.

physical injury and an environment injurious to health and welfare by "Neglect and Tying/Close Confinement" (June 2019). The petition alleged that the minor children were neglected due to an environment injurious to their welfare (705 ILCS 405/2-3(1)(b) (West 2022)) and for being under the age of 14 without supervision for an unreasonable period of time (*id.*§ 2-3(1)(d)), and that they were abused due to a substantial risk of physical injury other than by accidental means (*id.* § 2-3(2)(ii)).

¶ 7       On November 17, 2022, the minor children were adjudicated neglected based on an environment injurious to their welfare and being unsupervised for an unreasonable period of time while under 14 years of age. The findings were based on stipulations by both respondent and Brittany to allegations in the State's petition, including respondent's stipulation to a history of using cocaine in the home around the minor children. The trial court further found that it was contrary to the health, welfare, and safety of the minor children to remain in the home due to respondent being incarcerated and Brittany needing services.

¶ 8       The December 13, 2022, family service plan provided that respondent needed to cooperate with DCFS and any court order to successfully complete services, to keep all appointments with the caseworker, and to complete a substance abuse assessment and follow the resulting recommendations. Respondent was currently incarcerated at Danville Correctional Center and had four convictions of assault and one conviction of dangerous drugs.

¶ 9       The trial court entered the dispositional order on January 9, 2023. Therein, the trial court made the minor children wards of the court and set a goal of return home within 12 months. The order stated that respondent needed to comply with the service plan, including substance abuse treatment and necessary family services.

¶ 10    The June 2, 2023, permanency order provided that the goal remained return home within 12 months. It found that both Brittany and respondent had not made reasonable progress nor efforts toward the minor children's return home.

¶ 11    Per the status hearing court report by the Allendale Foster Care Program filed September 18, 2023, respondent had not begun services to complete a substance abuse assessment, with Danville Correctional Center reporting that he would not be able to begin services until closer to his release date. Respondent reported that he would see if he could enroll in services sooner or transfer to another prison. He had participated in some video visitation with the minor children. Another status report filed November 27, 2023, provided the same and stated that respondent had made unsatisfactory progress and efforts.

¶ 12    In the September 5, 2023, family service plan, respondent's goal remained cooperation with agency and court orders to complete services, including a substance abuse assessment. He was making unsatisfactory progress because he was unable to complete services until he was either released from prison or moved to another prison.

¶ 13    In the December 1, 2023, permanency order, the trial court again found respondent had made neither reasonable progress nor efforts toward the return home of the minor children. The permanency goal was changed to guardianship.

¶ 14    By the filing of the March 4, 2024, status hearing court report, respondent had moved from Danville Correctional Center to Southwestern Illinois Correctional Center. He reported that he was enrolled in substance abuse services at his new facility, which provided more opportunities for services. The agency had not yet been able to confirm services. The prison was six hours from the location of the children, and visitation was set for every six months. The agency was

recommending that the court move forward with termination of parental rights with a goal change to adoption.

¶ 15    The permanency hearing court report from Allendale filed May 10, 2024, stated that the permanency goal was no longer reunification, so the agency was no longer monitoring respondent's participation in services. Another permanency hearing report filed July 3, 2024, provided the same.

¶ 16    The July 19, 2024, permanency order found that both Brittany and respondent had not made reasonable efforts nor progress toward the minor children's return home. Brittany was not participating in services, and respondent was incarcerated with outstanding services. The goal was changed to substitute care pending a determination of parental rights.

¶ 17                                    A. Petition to Terminate Parental Rights

¶ 18    On July 23, 2024, the State petitioned to terminate respondent's parental rights. It alleged that respondent had failed to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the minor children (750 ILCS 50/1(D)(b) (West 2022)); failed to make reasonable efforts to correct the conditions that were the basis for the minor children's removal during any nine-month period following the adjudication of neglect (*id.* § 1(D)(m)(i)); and failed to make reasonable progress toward the return home of the minor children during any nine-month period following the adjudication of neglect (*id.* § 1(D)(m)(ii)). The petition listed the relevant time period for both reasonable efforts and progress as November 17, 2022, to July 19, 2024.

¶ 19    Following the petition, the October 30, 2024, permanency hearing court report provided that respondent's scheduled release date was January 16, 2026. He was in a drug rehabilitation program with daily group meetings and was required to attend AA and NA meetings. Successful completion of services could reduce his prison sentence. Respondent had not contacted the agency

regarding visitation nor the well-being of the minor children. The permanency report filed November 15, 2024, found that respondent was still in need of services and had not made reasonable efforts or progress.

¶ 20                              B. Respondent's Motion to Dismiss

¶ 21    On September 5, 2024, respondent filed a section 2-619 motion (735 ILCS 5/-619 (West 2022)) to dismiss the State's petition for termination of parental rights. Therein, he argued that the Adoption Act allowed for a finding of unfitness based on a parent's incarceration (750 ILCS 50/1(D)(r), (s) (West 2022)), and "the legislature would not have created two sections to determine unfitness if others could be used when a parent is incarcerated," indicating that these were the *only* grounds available to find a parent unfit when incarcerated. Respondent concluded that the State's alleged grounds of unfitness (*id.* §§ 1(D)(b), (m)(i), (m)(ii)) were therefore inappropriate.

¶ 22    On October 10, 2024, following a hearing, the trial court denied respondent's motion to dismiss.

¶ 23                              C. Hearing and Fitness Finding

¶ 24    The trial court heard the petition to terminate parental rights over the course of three days: December 2, 9, and 10, 2024. Following the December 2, 2024, hearing, the trial court entered an order finding both Brittany and respondent unfit persons, and it continued the hearing for the best interests findings. As this appeal involves only the finding of unfitness, we summarize only the December 2 hearing.

¶ 25    The State called Erin Berry, who testified as follows. She was a foster care manager at Allendale, which was a private social service agency contracted by DCFS to provide foster care services. Before becoming the foster care manager, she was a case manager, where she was one of the workers assigned to the minor children's case, managing it from August 2022 to November

2022 and again from April 2024 to October 2024. Berry identified several State exhibits, including integrated assessments, family service plans, and court reports, which were admitted into evidence.

¶ 26 Regarding respondent's services, he was asked to complete a substance abuse service, and the agency reserved the right to add services upon his release from prison. As of the hearing, he had not completed substance abuse treatment. While Berry was the caseworker, respondent had never contacted the agency regarding the minor children or visitation.

¶ 27 Respondent called Shakyria Bailey, who testified that she was currently employed at A Safe Place but had previously worked at Allendale as a foster care case manager. She was involved with the minor children's case, beginning her involvement around November 2022. When she took over the case, respondent had not begun any recommended services. When she contacted the prison, she was told that services were not offered to respondent, and respondent told her that other prisons might offer services. She typically spoke with respondent once a month. She testified that he showed interest in seeing the minor children and participated in their visits.

¶ 28 Bailey continued that, while at Danville, respondent had in-person visitation every three months, and she explained to him that his move to Southwestern would decrease visitation to every six months. In her view, he was involved with the children and his services as much as he could in his capacity: he was "the most involved parent I had, even due to his limitations." Respondent's move to Southwestern was an attempt to complete services, although it also meant less visitation with the minor children.

¶ 29 On cross-examination, Bailey confirmed that respondent had not to her knowledge completed parenting, mental health, or substance abuse services.

¶ 30 Respondent testified that he requested the move from Danville to Southwestern "for good time and for substance abuse, and they offered more programs than Danville did." He was aware

that the transfer would make visitation with the minor children less frequent, but he "felt like I would be able to get home faster." He was currently in a behavior modification program that included a program for drugs and substance abuse. That program, which he described as group counseling—"how to think different ways, you know, and don't go with your first initial reaction but go with, like, the second one"—helped him get out of prison sooner.[3] The substance abuse treatment aspect was "just like a group, everybody talking amongst each other sharing stories."

¶ 31    Respondent also testified that he had completed programs called InsideOut Dads and Inner Circle, and he was participating in AA and NA groups. InsideOut Dads was a 12-week program where inmates with kids met weekly to talk, moderated by a counselor, and Inner Circle was a program that met five times and went through different scenarios like applying for a job. He enrolled in AA and NA because he had had a drug problem. It was difficult for respondent to get a hold of DCFS from prison.

¶ 32    During closing argument, the guardian *ad litem* stated that she understood respondent's argument that he had made all efforts he could given his situation, and she was discouraged that the agencies could not do more to facilitate visitation or provide telehealth for him. Although she commended respondent for everything he was doing, "the progress has just not been there," and she did not believe it was in the minor children's best interests to wait another two years for his release. Respondent's counsel objected that this was not the best interest portion of the hearing and that the minor children's best interests should not be considered, and the court noted the objection.

---

[3]He explained that 90 days involved in the program reduced his sentence by approximately 60 days.

¶ 33　　The trial court found respondent an unfit person on all three alleged grounds, explaining as follows. At the outset, it commented that guardianship had been awarded to DCFS in November 2022, and "here we are, two years later, and what has changed?" Regarding respondent's degree of interest, concern, and responsibility for the minor children, the court noted that his prison facility transfer would, "for all intents and purposes, terminate his visitation or his parenting time with his kids," and his first response for why he did the transfer was "for good time." The court characterized his decision to transfer facilities as "he basically gave up two years of visiting his kids so he'd get out of prison early." The court continued that respondent wanted it to think that he wanted to get out of prison early to be a better dad, but most people want to get out of prison if they can, and respondent had never initiated contact with DCFS to check on the minor children. The court found this showed a lack of interest in seeing the minor children. The court also noted that respondent never sent the minor children pictures or birthday cards, which were things he could have done from prison.

¶ 34　　The trial court also found it was respondent's fault that he was in prison, which it found similar to a parent who says they cannot be in services due to a drug problem. It found Bailey's testimony incredible based on her saying that respondent was more involved than most parents who are not in prison, despite her typically having contact with him only once a month. As to respondent's services, he had not begun them until the minor children were already in care for a year and a half. His services were classes where inmates talked and shared stories.

¶ 35　　The trial court continued that respondent had incurred verbal reprimands and disciplinary restrictions while incarcerated. Further, respondent's counsel had stated that respondent was not in a place where he could have his children home, and the court agreed that he could not for

apparently at least another two years. The court commented that respondent had "hurdles that can't be completed. They can't be completed because of his actions."

¶ 36    Turning to reasonable efforts and progress, it further stated that the courses respondent was taking "are not really courses at all." Having found respondent unfit on all three grounds, the court continued the hearing for the best interest portion. Following the continued hearing, the trial court found that termination of parental rights was in the minor children's best interests, and it terminated respondent's parental rights on December 10, 2024.

¶ 37    This timely appeal followed.

¶ 38                                     II. ANALYSIS

¶ 39    Respondent contends that the trial court erred in finding him an unfit person under section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)). In addition, respondent argues that the trial court improperly denied his motion to dismiss the State's petition to terminate parental rights.

¶ 40    The Juvenile Court Act of 1987 provides a two-stage process for the involuntary termination of parental rights. 705 ILCS 405/2-29(2) (West 2020); *In re Tiffany M.*, 353 Ill. App. 3d 883, 889 (2004). The first stage requires that the State prove by clear and convincing evidence that the parent is an "unfit person" under section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2020)). *In re Gwynne P.*, 215 Ill. 2d 340, 354 (2005). If the court finds the parent unfit, the court considers whether it is in the best interests of the child to terminate parental rights. *In re C.W.*, 199 Ill. 2d 198, 210 (2002). Only the first stage, unfitness, is at issue on this appeal.

¶ 41    Section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2020)) lists various grounds to find a parent unfit, any of which alone will support a finding of unfitness. *In re Tiffany M.*, 353 Ill. App. 3d at 889. Therefore, we may affirm the trial court's finding where the evidence supports any one of the alleged grounds of unfitness. See *In re Nevaeh R.*, 2017 IL App (2d) 170229, ¶ 20

("The court need find a parent unfit under only one of the grounds" in section 1(D) of the Adoption Act to proceed to a best-interest hearing).

¶ 42     Relevant here are sections 1(D)(b) (failure to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare), 1(D)(m)(i) (failure to make reasonable efforts to correct the conditions that were the basis for the removal of the child during any nine-month period following the adjudication of neglect or abuse), and 1(D)(m)(ii) (failure to make reasonable progress toward the return of the child during any nine-month period following the adjudication of neglect or abuse).

¶ 43     To reverse a trial court's finding that there was clear and convincing evidence of parental unfitness, a reviewing court must determine that the trial court's finding was against the manifest weight of the evidence. *In re C.N.*, 196 Ill. 2d 181, 208 (2001). A finding is against the manifest weight of the evidence where the opposite conclusion is clearly evident or the decision is unreasonable, arbitrary, or not based on the evidence. *In re N.B.*, 2019 IL App (2d) 180797, ¶ 30. In reviewing a finding of unfitness, this court does not reweigh the evidence or reassess the credibility of witnesses. *In re Adoption of P.J.H.*, 2019 IL App (5th) 190089, ¶ 11.

¶ 44                              A. Fitness Finding

¶ 45     Respondent first argues that the trial court erred by inappropriately considering the minor children's best interests in making its unfitness finding. The State responds that respondent failed to preserve this argument by failing to file a post-trial motion and that, regardless, the argument fails on the merits.

¶ 46     Regardless of any forfeiture, this argument clearly fails on its merits because it was the guardian *ad litem*, not the trial court, who broached the children's best interests at the fitness hearing. Respondent's counsel objected to the guardian's argument, and the trial court noted the

objection. In reaching its fitness decision, the trial court did not discuss the minor children's best interests: The most the trial court said was that respondent was not in a place to have the children home for another two years, but it said this in the context of respondent's incarceration impeding him from doing what he needed to do to be ready for their return home. To wit, "he has hurdles that can't be completed," and they "can't be completed because of his actions."

¶ 47 Next, respondent argues that the trial court's finding that he failed to maintain a reasonable degree of interest, concern, or responsibility as to the minor children's welfare was against the manifest weight of the evidence. He argues that he reached out to his mother for updates on the children, participated in visitation, and was described by his caseworker as being as involved as he could be. He testified that he wanted to be a better father and that his prison transfer would help him to get out of prison sooner so that he could return to being a father.

¶ 48 Under section 1(D)(b) of the Adoption Act (750 ILCS 50/1(D)(b) (West 2022)), a parent may be found unfit for failure to maintain a reasonable degree of interest, concern, or responsibility as to the child's welfare. In assessing this ground of unfitness, a court considers the parent's efforts to visit and maintain contact with the child, among other things such as inquiries into the child's welfare. *In re B'yata I.*, 2014 IL App (2d) 130558-B, ¶ 31. The court focuses on the reasonableness of the parent's efforts, not their success. *In re M.J.*, 314 Ill. App. 3d 649, 656 (2000). The parent's circumstances are relevant to the court's analysis. *In re M.I. V. J.B.*, 2016 IL 120232, ¶ 27; *In re B'yata I.*, 2014 IL App (2d) 130558-B, ¶ 31 (identifying relevant circumstances including difficulty obtaining transportation and poverty). If personal visits with the child are impractical, other methods of communication, such as letters, telephone calls, and gifts, may demonstrate interest, concern, or responsibility. *In re B'yata I.*, 2014 IL App (2d) 130558-B, ¶ 31. "Even extreme circumstances that impede the parent's ability to develop a relationship with the child do

not excuse a complete lack of communication or interest in the child." *In re A.S.B.*, 293 Ill. App. 3d 836, 843-44 (1997).

¶ 49 We are mindful that a parent is not fit merely because they have demonstrated some interest or affection toward the child; the interest, concern, or responsibility must be reasonable. *In re B'yata I.*, 2014 IL App (2d) 130558-B, ¶ 31. Completion of service plans may be evidence of a parent's interest, concern, or responsibility. *Id.* Further, as the plain language of the statute is disjunctive—interest, concern, *or* responsibility—any of the three listed elements may be considered individually as a basis for unfitness. *Id.*

¶ 50 The trial court's finding on maintaining a reasonable degree of interest, concern, or responsibility was not against the manifest weight of the evidence. It is undisputed that respondent's transfer to the Southwestern prison facility reduced his visitation with the minor children from every three months to every six months. Respondent was aware that the transfer would reduce visitation: Bailey testified that she explained the change in visitation to him. Although respondent testified that he transferred because he wanted to get out of prison to be a better father, the trial court did not credit that statement. Instead, it noted that "people want to get out of prison," and respondent's first answer to why he requested the transfer was "for good time." The court also did not credit Bailey's testimony regarding respondent's extraordinary involvement with the minor children, commenting that Bailey talked to respondent on average only once per month and that "her bias *** was very, very clear." We defer to the trial court's credibility determinations, and here, the determinations were reasonable.

¶ 51 In addition, although respondent asked his mother about the minor children, Berry testified that he never contacted DCFS about them, whether about their welfare or about visitation. The record does not show that he ever sent the minor children pictures or birthday cards, which would

have demonstrated his interest or concern for them. Finally, despite respondent's professed desire to get out of prison soon to be a better dad, he received verbal reprimands and disciplinary restrictions while in prison, demonstrating a lack of reasonable responsibility.

¶ 52    We appreciate that respondent's incarceration limited his ability to demonstrate interest, concern, or responsibility for the children. Nevertheless, his interest, concern, or responsibility had to be reasonable under his circumstances. Here, respondent chose to forgo more frequent visitation with the minor children for what the trial court believed to be his own benefit, he never inquired about the minor children to DCFS, and there was no evidence that he communicated with the minor children outside of scheduled visitation. Under these facts, the trial court's finding of unfitness was reasonable.

¶ 53    As any one ground of unfitness is sufficient to affirm the finding (*In re Nevaeh R.*, 2017 IL App (2d) 170229, ¶ 20), we affirm the finding of unfitness based on respondent's failure to maintain a reasonable degree of interest, concern, or responsibility as to the minor children's welfare.

¶ 54                                B. Motion to Dismiss

¶ 55    Respondent additionally argues that the trial court erred in denying his section 2-619 motion to dismiss the State's petition to terminate parental rights. He contends that subsections 1(D)(r) and 1(D)(s) of the Adoption Act (750 ILCS 50/1(D)(r), (s) (West 2022)) specifically deal with the fitness of a parent when the parent is incarcerated,[4] and, because the State's main

---

[4]In pertinent part, section 1(D)(r) provides that a parent is an unfit person when the parent is incarcerated at the time of the petition to terminate parental rights and, prior to the petition, had little or no contact with the child or provided little or no support to the child, and the parent's incarceration will prevent the discharge of their parental responsibilities for more than two years after the filing of the petition; and

argument for terminating his parental rights was his incarceration, the State was required to have alleged only those grounds. He concludes that the State's failure to do so warranted dismissal of the petition.

¶ 56    The State responds that we should affirm the denial of respondent's motion to dismiss because respondent failed to provide a record of the hearing on the motion. The State continues that, regardless of the lack of a proper record, the motion was properly denied because the State was not required to seek an unfitness finding solely under sections 1(D)(r) and (s). Rather, it argues that it had discretion on which grounds of unfitness to allege, and any one or more of the enumerated grounds in section 1(D) are sufficient to support a finding of unfitness.

¶ 57    Respondent's argument lacks merit, regardless of what was heard at the hearing on the motion to dismiss, because the State was not required to proceed under any particular ground of unfitness. See 750 ILCS 50/1(D) (West 2022) ("The grounds of unfitness are any one or more of the following ***."). An incarcerated parent may be found unfit on grounds other than sections 1(D)(r) and (s). See, *e.g.*, *In re Je. A.*, 2019 IL App (1st) 190467, ¶ 73 (explaining that incarceration impeded the respondent's progress toward reunification); *In re Gwynne P.*, 346 Ill. App. 3d at 597 (affirming the trial court's finding that the incarcerated respondent failed to make reasonable efforts where the respondent did not attempt to participate in services available while incarcerated); *In re Interest of K.H.*, 2024 IL App (1st) 240569-U, ¶¶ 52-54 (finding that the respondent's incarceration did not preclude a finding that he failed to maintain a reasonable degree of interest, concern, or responsibility, and the trial court's finding was not against the manifest weight of the

section 1(D)(s) provides that the parent is incarcerated at the time of the petition, the parent has been repeatedly incarcerated as a result of criminal convictions, and the parent's repeated incarceration has prevented the discharge of their parental responsibilities for the child.

evidence). Thus, the State was not required to allege unfitness under sections 1(D)(r) or 1(D)(s), let alone only those grounds, and the trial court did not err in denying respondent's motion to dismiss.

¶ 58                                      III. CONCLUSION

¶ 59     For the reasons stated, we affirm the judgment of the circuit court of McHenry County. This disposition was filed after the 150-day deadline (Ill. S. Ct. R. 311(a)(5) (eff. July 1, 2018)) for good cause in reaching consensus on the resolution of the appeal.

¶ 60     Affirmed.